232 So.2d 378 (1970)
THE FLORIDA BAR, Complainant,
v.
Ronald E. KAY, Respondent.
No. 38694.
Supreme Court of Florida.
February 11, 1970.
Rehearing Denied March 30, 1970.
M. Daniel Futch, Jr., Fort Lauderdale, for The Florida Bar, complainant.
Louis M. Jepeway, Jr., of Jepeway, Gassen & Jepeway, Miami, for respondent.
PER CURIAM.
We have received the following judgment of the Board of Governors of The Florida Bar which is predicated upon a violation of Integration Rule, Art. XI, Rule 11.02(3), 32 F.S.A.:
"JUDGMENT
"This cause came on for review and consideration by the Board of Governors *379 of The Florida Bar upon the report of the referee and the record of proceedings before him.
"The referee found that on December 1, 1966, respondent was a party to a homosexual act with a consenting adult male in the public lavatory of Stranahan Park, Fort Lauderdale, Florida. This activity was observed by a police officer. As a result of this observation, respondent was charged with indecent exposure in the Fort Lauderdale Municipal Court, said charge being a violation of the Code of Ordinances of the city. A finding of guilty was subsequently entered. An appeal was taken by respondent to the Circuit Court which affirmed the municipal court. A further appeal was taken to the Fourth District Court of Appeal. On November 4, 1968, the Fourth District Court of Appeal affirmed the circuit court. Kay v. City of Fort Lauderdale, 215 So.2d 49 (4th D.C.A.Fla. 1968).
"In addition to respondent's homosexual activity, the referee found a lack of candor and serious conflicts in respondent's testimony at the criminal and disciplinary hearings.
"It was the opinion of the referee that respondent's conduct was blatantly contrary to good morals and a proper subject for disciplinary action. The referee recommended that respondent be found guilty of misconduct justifying disciplinary measures and that he be permanently disbarred.
"The Board of Governors of The Florida Bar concurs with the referee's findings of fact and finds respondent guilty of conduct justifying disciplinary measures but modifies the recommendation of discipline. Therefore it is,
"ORDERED AND ADJUDGED that Ronald E. Kay be found guilty of conduct contrary to good morals and that he be disbarred from the practice of law in Florida. It is further ordered that he pay the costs of these proceedings in the amount of $696.11.
"DONE AND ORDERED this 26th day of May, 1969."
We have carefully considered the oral arguments presented before this Court as well as the briefs and record arising out of this cause. We conclude that there is no reason to disturb the judgment of the Board of Governors, which is hereby confirmed. The respondent Ronald E. Kay is hereby disbarred from the practice of law in this State and the costs of this proceeding in the amount of $696.11 are hereby taxed against him.
It is so ordered.
DREW and CARLTON, JJ., SPECTOR, District Judge, and VANN, Circuit Judge, concur.
ERVIN, C.J., concurs specially.
ERVIN, Chief Justice (specially concurring).
This Court having adopted the view that The Florida Bar has authority to regulate and discipline the morals of members of The Florida Bar (The Florida Bar vs. Hefty, Fla., 213 So.2d 422). I concur in the judgment rendered in this case. My remarks hereinafter are expressed primarily on assumption the Respondent will seek reinstatement inasmuch as The Bar indicates no permanent disbarment is intended, but apparently only an initial condemnation of Respondent's antisocial act.
While Respondent's act definitely affronts public conventions, I am concerned as to the extent of the authority of the Board of Governors of The Florida Bar under controlling concepts of due process to continue the discipline of Respondent since there is no showing in the record of a substantial nexus between his antisocial act, or its notoriety, or place of commission, and a manifest permanent inability on Respondent's part to live up to the professional responsibility and conduct required of an attorney. Compare such cases as *380 People v. Palmer, 61 Ill. 255; In Re Washington, 82 Kan. 829, 109 P. 700; People ex rel. Black v. Smith, 290 Ill. 241, 124 N.E. 807, 9 A.L.R. 183; State v. Byrkelt, 4 Ohio S. & C.P. Dec. 89; In Re: H---- T----, 2 Pennyp. (Pa.) 84; Norton v. Macy, 417 F.2d 1161, U.S. Court of Appeals for the District of Columbia Circuit (July 1, 1969); Britt v. Superior Court, 58 Cal.2d 469, 374 P.2d 817. See 7 Am.Jur.2d Attorneys at Law § 45. See the dissenting opinion of Justice Black in Cohen v. Hurley, 366 U.S. 117, at 145-148, 81 S.Ct. 954, 6 L.Ed.2d 574, subsequently adopted in Spevak v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed. 574. See also, United States v. Coplon, 2 Cir., 185 F.2d 629, at page 638, and Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929.
Here, Respondent was not convicted of a felony in a state court, although he was convicted of violating an ordinance in a municipal court. Thus, in the present case, Respondent was not convicted of committing a crime against the state of the class per se deemed indicative of the actor's failure to possess the ability and character necessary to meet the standards of professional responsibility and conduct commensurate with the office of attorney. In reinstatement proceedings, if opposed by The Bar, it would appear necessary for it to show a substantial nexus between the nature or circumstances of Respondent's conduct and his likelihood or tendency to continue to substandardly perform the professional responsibilities of an attorney to the degree that he is deemed totally unfit to resume practice of law.
The present record contains no evidence  scientific, medical, pathological or otherwise  suggesting homosexual behavior among consenting adults is so indicative of character baseness as to warrant a condemnation per se of a participant's ability ever to live up to and perform other societal duties, including professional duties and responsibilities assigned to members of The Bar. Consequently, the present case leaves this issue unresolved by appropriate findings based on competent evidence.
The circumstances and notoriety of the Respondent's isolated act in its commission, although deemed grave enough to merit initial condemnation and disbarment, does not appear to warrant imposition of permanent disbarment in the absence of a showing of Respondent's permanent unfitness to resume law practice. Here, the homosexual act occurred in a partially partitioned public toilet stall. It was committed only in the known presence of the other participant of the act and, of course, also in the surreptitious presence of the policeman who viewed the act from a point of concealment. Evidence of antisocial behavior ferreted by peeping has never enjoyed widespread legal approval. Compare Britt v. Superior Court, supra.
I acknowledge that circumstances surrounding an act of this sort may be such as to reasonably suggest that a participant's desire for homosexual gratification may exceed his ability to demonstrate a public respect and appreciation of existing societal morals and values. In such instances it possibly may be shown by competent evidence that the participant is so propelled toward deviate sexual behavior that he is incapable of entertaining and manifesting that degree of respect and conscious awareness of public morals and public decency necessary to perform the professional responsibilities required of an attorney. But such permanent unfitness ought to be established by competent substantial evidence in the record of a respondent's case if he is to be denied reinstatement.
Since it is held in Florida that The Bar has jurisdiction to discipline Florida Bar members concerning their personal or private morals, it would appear appropriate to require that such discipline be subject to a showing originally or when reinstatement is sought that there is a substantial connection between a member's antisocial behavior and his ability to otherwise carry out *381 his professional responsibilities as an attorney. Otherwise, The Bar will be virtually unfettered in its power to censor the private morals of Florida Bar members, regardless of any nexus between the behavior and the ability to responsibly perform as an attorney. Governmental regulation in the area of private morality is generally considered anachronistic in the absence of a clear and convincing showing there is a substantial connection between the private acts regulated and public interests and welfare. See cases hereinbefore cited.
The foregoing considered, it appears to me The Bar should be concerned, when and if Respondent applies for reinstatement, with the pathological nature of his behavioral maladjustment and his ability for successful rehabilitation, and whether his problem reasonably militates permanently against his resuming the responsible practice of law.